IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| ANTHONY WALLACE | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2390-STA-egb |
| | ) | |
| JAMES M. HOLLOWAY, Warden et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DISMISSING CLAIMS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On June 2, 2016, Plaintiff Anthony Wallace, who is currently incarcerated at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. On June 6, 2016, the Court granted Wallace leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). Wallace's allegations arise from his incarceration at West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, making venue proper in this District. The Clerk shall record the Defendants as Former WTSP Warden James. M. Holloway, Assistant WTSP Warden First Name Unknown ("FNU") Fitts, Internal Affairs Lieutenant ("Lt") Thomas Shells, Internal Affairs Sergeant ("Sgt.") FNU Galloway, Unit Manager William Bryant, Unit Manager M. Smith, Corporal ("Cpl.") FNU Bonds, Case Manager FNU Ray, Cpl. C. Jones, Cpl. A. Doley, Sgt. N. Coleman, C/O FNU Theus, C/O FNU Radford, Sgt. FNU Williams, Mental Health Dr. O. Robinson, Strike Force Commander James Bobela, Lt. FNU McLin, Lt. FNU Alexander, Captain

FNU Castleman, C/O FNU Hankens, Lt. Michael Jones, Correction Officer ("C/O") FNU Jones, C/O FNU Brinkly, and Inmate Cesare Payne.[1]

## BACKGROUND

Wallace alleges that on December 10, 2015, he had a "misunderstanding" with Cpl. Bonds about waxing the floor in Unit 3-B-Pod. (Compl. at 4 & 6.) Cpl. Bonds called Unit Manager Bryant to deal with the situation. (*Id.*) According to Wallace, Unit Manager Bryant refused to hear his side of the story and ordered Wallace to be on lockdown for the day. (*Id.* at 6.) Wallace did not agree with the order and argued with Bryant. (*Id.*) During the argument, Unit Manager Bryant told Wallace he was going to move Wallace back to Unit 12. (*Id.*) Although the Complaint is not clear on this point, in January 2015, Wallace was housed in Unit 12 when unknown Vice Lord inmates ambushed Wallace and stabbed him in the back over twenty times. (*Id.*) Wallace alleges that Unit Manager Bryant knew about the prior assault in Unit 12. (*Id.*)

Wallace was released from segregation on December 14, 2015. (*Id.* at 6-7.) Wallace alleges that Cpl. Jones told Wallace that Unit Manager Bryant intended to transfer Wallace to Unit 12. (*Id.* at 6-7.) Wallace pleaded with Unit Manager Bryant not to send him to Unit 12 and cited the large number of Vice Lords housed in the unit. (*Id.* at 7.) Unit Manager Bryant reassigned Wallace to Unit 12 anyway. (*Id.* at 7.) Upon Wallace's transfer to Unit 12, an aggressive and angry mob of Vice Lord inmates approached Wallace and informed Wallace that he was not welcome and should leave before they killed him. (*Id.*) In self-defense, Wallace

---

[1] Wallace also purports to sue nine "John Doe" defendants. Service of process cannot be made on a fictitious party. The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). The Clerk is directed to terminate the reference to the John Doe defendants on the docket.

pulled out two homemade knives and started attacking the other inmates. (*Id. see also* Incident Report 01489473, ECF No. 1-1.) After about a minute, Sgt. Coleman intervened, sprayed Wallace, and took Wallace to medical. (*Id.*) The next day Wallace spoke with Sgt. Galloway in internal affairs. (*Id.*) Wallace was placed in segregation on the charge of possession of a deadly weapon. (*Id.*) Wallace alleges that Sgt. Galloway never thoroughly investigated the incident (Id. at 7-8.) According to Wallace, a Vice Lord inmate was also locked up after the altercation because a video showed the Vice Lord inmate holding a knife. (*Id.*) However, Sgt. Williams "mysteriously' released the Vice Lord inmate from segregation. (*Id.*)

The Complaint goes on to allege that while Wallace was in segregation, Cpl. Jones, Cpl. Doley, Officer Theus, Officer Radford, and Sgt. Bryant made fun of him. (*Id.* at 8.) On December 18, 2015, Wallace and Defendant Theus had a "big argument" about the night of December 14, 2015, and she proceeded to make several comments about Unit 12 including, "Yeah we used your bitch ass to keep the unit clean," and "Bryant slaved your bitch ass and then threw you to the wolves." (*Id.*) Wallace contends "at that moment" he became paranoid, causing him to lose sleep and hear voices telling him to kill them before they kill you. (*Id.*) On January 4, 2016, Wallace spoke to Dr. Robinson about his issues, and she told Wallace that she would get him some treatment. (*Id.*)

On January 6, 2016, Wallace got into an argument with the Vice Lord inmates about the night of December 14, 2015. (*Id.* at 8-9.) During the argument, the Vice Lord inmates threatened Wallace. (*Id.* at 9.) Cpl. Jones, Cpl. Doley, and Theus were present and heard the threats but did nothing to intervene. (*Id.*) After about ten minutes passed, Inmate Payne stepped in to diffuse the situation. (*Id.*) Then on January 8, 2016, Wallace came out of a shower, which everyone in the pod including the Defendant correctional officers knew was broken, and

3

assaulted one of the Vice Lord inmates who had previously threatened Wallace. (*Id.*; *see also* Incident Report 01198491, ECF No. 1-2.)

Wallace contends that Defendants Sgt. Galloway and Lt. Shells never fully investigated the incident because they left Wallace in segregation knowing the severity of his situation with the Vice Lord inmates. (*Id.* at 9-10.) Wallace alleges that Lt. Shells wrote him up for possession of a deadly weapon and assault on offender with a weapon in order to justify his "very poor duties in protecting [Wallace]." (*Id.* at 10, *see also* Disciplinary Report, ECF No. 1-3.) Wallace also alleges that Lt. Shells had Strike Force Commander Bobela plant a knife in Wallace's cell. (*Id.*; *see also* Incident Report 0119608, ECF No. 1-4.) Wallace was told by Cpl. Jones that Lt. Shells ordered Sgt. Williams to hear the charges against Wallace because Wallace had threatened Lt. Shells with a lawsuit.

On February 5, 2016, Wallace gave an emergency grievance to Lt. McLin concerning Lt. Shells and Sgt. Williams; however, he never received any disposition documents. (*Id.*) The same day Wallace spoke with Dr. Robinson about the voices in his head and the situation with the staff. (*Id.*) Wallace also spoke with Warden Holloway, Lt. Alexander, and Asst. Warden Fitts about the staff and disciplinary board, but they did not take any action. (*Id.* at 11.). Capt. Castleman, upon hearing about Wallace's issues, brought Dr. Robinson to talk to Wallace. (*Id.* at 11.) Wallace alleges that he begged Capt. Castleman and Dr. Robinson to have him moved from Unit 3 to medical because he did not feel safe around the staff. (*Id.*) Because Wallace believed Capt. Castleman was taking a long time to make the move and because Wallace continued to hear voices in his head, Wallace frequently asked Officer Hankens to call Defendant Castleman. (*Id*. at 12.)

4

In a confusing series of events, the Complaint alleges that Wallace told an officer he wanted to take a shower, but when he saw Sgt. Bryant, he began to hear voices telling him to kill Bryant before Bryant killed him. (*Id.*) Wallace asked to see Dr. Robinson and walked around the pod waiting for her to arrive. (*Id.*) Wallace alleges that when he saw Sgt. Bryant coming, the next thing he knew Sgt. Bryant slammed Wallace's face into a staircase, and Wallace was face down on the staircase, wearing handcuffs. (*Id.*; *see also* Incident Report 01197028, ECF No. 1-5.) Lt. Jones, Officer Jones, Brinkly and a tack-team officer took Wallace to medical where he was kept on a "security hold." (*Id.*) Sgt. Bryant wrote Wallace up for defiance. (*Id.* at 13.) On April 28, 2016, Wallace was transferred. (*Id.*) Wallace alleges that Defendants have conspired with one another. (*Id.* at 14.) Wallace seeks punitive and compensatory damages. (*Id.*)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the Court applies the pleading standards under Federal Rule of Civil Procedure 12(b)(6), announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations

5

in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Nevertheless, *pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quotation omitted); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.").

## ANALYSIS

**I. Section 1983**

Wallace filed his Complaint on the official form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### A. Personal Involvement

As an initial matter, Wallace's Complaint fails to allege any violation of his civil rights by Defendants Unit Manger Smith, Bonds, Coleman, Robinson, Castleman, Hankens, Brinkly, and Payne. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Wallace has merely referred to these prison officials in the course of a broader narrative about his treatment at the prison. Without some allegation of personal involvement in an unconstitutional act against Wallace, the Complaint is **DISMISSED** as to these Defendants.

### B. Supervisory Officials

Likewise, Wallace has named administrative officials at the prison as Defendants, apparently because of their supervisory roles. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Thus, "a plaintiff must plead that each

Government-official defendant, through the official's own official actions, violated the Constitution." *Id.*.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Therefore, Wallace's claims against these supervisory officials must be **DISMISSED**.

**C. Non-State Actor**

Next, the Complaint names Inmate Cesare Payne as a Defendant and alleges he played a role in breaking up a prison fight. Payne is presumably a private citizen. Wallace makes no allegations that he is employed by the state. Generally, in order to act "under color of state law," a person must be a state or local government official or employee. A private party may be found to have acted under color of state law for purposes of § 1983 only when the party "acted together with . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to the state. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Wallace has made no such allegations against Payne. Therefore, the Complaint is **DISMISSED** as to Inmate Payne.

**D. Failure to Investigate**

Wallace next alleges claims against Defendants Sgt. Galloway, Lt. Shells, Sgt. Williams, and Lt. McLin for their alleged failure to investigate or take remedial measures, to the extent they were aware of his grievances and complaints. A failure to take corrective action in response to an inmate grievance or complaint does not constitute personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Defendants Galloway, Shells, Williams, and McLin cannot be sued merely because they failed to take action in response to Wallace's comments and grievances.

In addition to claims concerning the grievance process itself, Wallace alleges that Defendants Lt. Shells, Sgt. Bryant, and Bobela put false statements in their disciplinary reports. There ordinarily is no right of action against a witness who testifies falsely at trial. In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme Court held that police officers are absolutely immune from suits for money damages for alleged perjury during criminal trials. In so holding, the Supreme Court stated that private parties who testify in court traditionally have been immune from damages under § 1983. *See id.* at 330-34. Although a prison disciplinary proceeding is not precisely equivalent to a criminal trial, several courts have applied *Briscoe* to bar suits against prison employees who testify falsely at disciplinary hearings. *See, e.g.*, *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (report and recommendation adopted by district court); *McCullon v. Brouse*, Civ. No. 3:10-CV-1541, 2011 WL 1398481, at *8 (M.D. Pa. Mar. 24, 2011) (report and recommendation), *adopted*, 2011 WL 1419650 (M.D. Pa. Apr. 13, 2011); *Crumbley*

*v. Dawson*, No. 9:09cv14, 2010 WL 2209189, at *5 (E.D. Tex. May 28, 2010); *Gibson v. Roush*, 587 F. Supp. 504, 506 (W.D. Mich. 1984).[2] Other courts have held that, where a prisoner has received the process that is due, he has no due process claim arising from even false testimony at a disciplinary hearing. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process. Rather, such action violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights ...." (citations omitted)). Therefore, insofar as the Complaint can be read to allege a claim for making false statements in a disciplinary hearing, those claims must be **DISMISSED**.

**E. Eighth Amendment**

Wallace alleges a number of claims based on his treatment by prison officials at WTSP. Wallace's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Wallace has alleged a number of grounds to support his Eighth Amendment claims. The Court considers the basis for each claim separately.

---

[2] In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Supreme Court held that disciplinary committee members were entitled to qualified, rather than absolute, immunity. That decision stressed that hearing officers are not independent and are not akin to professional hearing officers. They are, instead, prison officials and fellow employees of the individuals lodging charges against the inmate. *Id.* at 203-04. That decision did not address the immunity of witnesses at disciplinary hearings.

1. **Verbal Abuse**

With respect to Wallace's claims about guards verbally abusing him, Wallace has failed to state a plausible claim for relief. The allegation that Sgt. Bryant, Cpl. Jones, Doley, Theus, and Radford ridiculed him and verbally harassed him is insufficient to state an Eighth Amendment claim. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"). Wallace's claims for verbal abuse are therefore **DISMISSED**.

2. **Failure to Protect**

Wallace's Complaint can also be read to allege that prison officials failed to protect him by releasing him into a housing unit with inmates who belonged to the gang known as the Vice Lords. According to Wallace, Unit Manager Bryant and other prison guards knew Vice Lords had previously assaulted Wallace. Eighth Amendment claims based on a failure to protect consist of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious," meaning that the prisoner must show he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*, or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The subjective component of an Eighth Amendment violation requires proof that an official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The Court holds that the Complaint fails to state a plausible claim for failure to protect Wallace from an assault. Wallace alleges that Unit Manager Bryant moved Wallace to Unit 12 where members of the Vice Lords were also housed. But Wallace has not alleged why Bryant should have known Wallace's reassignment would create a substantial risk of harm. The Complaint only alleges that unnamed Vice Lords assaulted Wallace previously when Wallace

was housed in Unit 10. The Complaint does not allege any facts to show why Wallace's transfer to a different housing unit (Unit 12) where other unnamed Vice Lords (who may or may not have been involved or even known about Wallace's previous altercation with the Vice Lords) were housed posed a risk of substantial harm to Wallace. The Complaint fails to state an Eighth Amendment claim for the failure to protect for this reason alone.

Even assuming that Wallace could plead these additional facts, Wallace has only alleged that his reassignment to Unit 12 caused him to suffer from emotional anxiety and fear for his safety. Wallace alleges that two fights occurred after his transfer. But the Complaint also alleges that Wallace initiated both attacks by pulling knives on the Vice Lord inmates. Perhaps more importantly, Wallace has not alleged that the fights caused him any physical injuries. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Therefore, Wallace's failure to protect claim is **DISMISSED**.

**3. Excessive Force**

Wallace next alleges Unit Manager Bryant used excessive force. Where an inmate challenges a use of force by prison guards, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("The 'core judicial inquiry' [for an excessive force claim] was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." (internal quotation marks omitted)).

A significant physical injury is not required to establish the objective component of an excessive force claim. *Id.* at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); *Hudson v. McMillian*, 503 U.S. 1, 7-9 (1992) (same). However, the Supreme Court has made clear that trivial physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 9-10 (internal quotation marks omitted); *see also Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

Applying *Hudson*, the Sixth Circuit has held that a prison guard's use of *de minimis* force to return an inmate to his cell did not violate the Eighth Amendment. *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The defendants in *Johnson* were alleged to have "pushed [the prisoner] into his cell, pulled hard on the security strap attached to his handcuffs, hurting his wrists, and then, while removing his cuffs, attempted to bend his thumb back." *Id.*; *see also Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that deputy grabbed inmate's privates and squeezed them "really hard" during a search insufficient to state an Eighth Amendment claim); *Leary*, 528 F.3d at 443 (allegation that deputy hit pretrial detainee on the neck with no intention to hurt him, in "a karate chop kind of deal," held to be a *de minimis* use of force); *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (holding that

14

officers "minimal application of force, together with Lockett's admitted minor injuries, did not rise to a level that is sufficient to sustain an Eighth Amendment claim").

The Complaint fails to state a claim against Bryant for the use of excessive force. Wallace's allegations are not entirely clear on how his encounter with Bryant unfolded. Wallace states that while he was waiting to take a shower, he began to have thoughts about killing Bryant. At that point Wallace asked to see Dr. Robinson. And while Wallace was waiting for Dr. Robinson, Bryant approached him and somehow pushed him onto a staircase face down. Wallace was handcuffed at the time. (ECF No. 1 at 12.) Bryant wrote in his incident report that Wallace failed to comply with Bryant's orders to go to the shower or return to his cell. (Exhibit 5, ECF No. 1-5 at 1.) Wallace also does not allege that he suffered any injury from the use of force, though he alleges that Bryant slammed his head into the staircase. The Court holds that the Complaint fails to allege that Bryant acted with malicious intent or with anything other than the intent to enforce discipline. Therefore, Wallace has failed to allege an Eighth Amendment claim for excessive force.

**4. Denial of Medical Treatment**

Wallace has also failed to state a plausible Eighth Amendment claim for the denial of medical treatment. According to the Complaint, Wallace did not receive proper treatment for his serious mental health issues. In the context of an Eighth Amendment claim for a lack of medical care, the objective component under *Farmer* requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Id.* at 897 (internal quotation marks omitted).

To establish the subjective component of an Eighth Amendment violation, a prisoner must show that a prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834. As previously noted, a prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. In this case Wallace has failed to allege that Dr. Robinson or any other Defendant was deliberately indifferent to his mental health needs. The Complaint states that Dr. Robinson saw Wallace each time he claimed to be hearing voices or asked to be seen. Wallace alleges that he did not always receive treatment as soon as he requested it. The Complaint nevertheless alleges that Wallace received some amount of treatment in due course. Therefore, Wallace has failed to adequately allege the subjective component of a claim for denial of medical care. Wallace's denial of medical treatment claim is **DISMISSED**.

**F. Assignment**

Wallace next requests a new housing assignment. This Court does not have the authority to supervise classification and assignment of inmates. An inmate does not have a constitutionally protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976). *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship" "in relation to the ordinary incidents of prison life"). Therefore, this request for relief is **DISMISSED**.

**G. Conspiracy**

Wallace broadly alleges that the Defendants' actions were part of a general conspiracy against him. The Court holds, however, that the Complaint does not plausibly allege a civil conspiracy. The Sixth Circuit has defined a civil conspiracy claim under § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
>
> 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). An assertion, unaccompanied by supporting facts, that parties conspired with each other, is a legal conclusion that a court need not accept as true. *Id.* at 563-64 (collecting cases). An allegation of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id.* at 564. Here Wallace's allegation that Defendants conspired with each other is entirely devoid of supporting facts. As such, the Complaint fails to state a claim for civil conspiracy and must be **DISMISSED**.

## II. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In this case, the Court finds good cause to grant Wallace an opportunity to

amend his pleadings but only as to his claims for failure to protect and the use of excessive force. Leave to amend Wallace's other claims would be futile because Wallace cannot cure the defects identified by the Court.

## CONCLUSION

The Court **DISMISSES** Wallace's Complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is **GRANTED** but only as to Wallace's claims for failure to protect and excessive force. If Wallace elects to file an amended pleading, he must do so within thirty (30) days of the date of entry of this order. Wallace is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. The text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amended complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint or the first amended complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Wallace fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Wallace is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 11, 2017.