# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ANTHONY WALLACE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   No. 16-2390-STA-egb |
| | ) |
| JAMES M. HOLLOWAY, Warden, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER DISMISSING AMENDED COMPLAINT IN PART and
## DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT BRYANT

On June 2, 2016, Plaintiff Anthony Wallace, who is currently incarcerated at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. On June 6, 2016, the Court granted Wallace leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). Wallace's allegations arise from his incarceration at West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, making venue proper in this District. On September 11, 2017, this Court dismissed Wallace's initial Complaint for failure to state a plausible claim for relief but granted Wallace leave to amend "only as to his claims for failure to protect and the use of excessive force." (ECF No. 6 at 17-18.) On October 2, 2017, Wallace filed an Amended Complaint and a Motion to Amend (ECF Nos. 9 & 10) his Complaint, both containing the same claims. The Motion to Amend (ECF No. 10) is **GRANTED**. Based on the allegations of the Amended Complaint, the Clerk shall record the Defendants as Former WTSP

Warden James. M. Holloway, Assistant WTSP Warden First Name Unknown ("FNU") Fitts, Internal Affairs Lieutenant ("Lt.") Thomas Shells, Internal Affairs Sergeant ("Sgt.") FNU Galloway, Unit Manager William Bryant, Unit Manager M. Smith, Corporal ("Cpl.") FNU Bonds, Case Manager FNU Ray, Cpl. C. Jones, Cpl. A. Doley, Sgt. Nathaniel Coleman, Correction Officer ("C/O") FNU Theus, Mental Health Dr. O. Robinson, Lt. FNU Alexander, Captain FNU Castleman, C/O FNU Hankens, Lt. Michael Jones, C/O FNU Jones, and C/O FNU Brinkly.

## BACKGROUND

Wallace's Amended Complaint largely repeats almost word-for-word the allegations included in his original Complaint. Wallace alleges that on December 10, 2015, he had a "misunderstanding" with Cpl. Bonds about waxing the floor in Unit 3-B-Pod. (Motion to Amend at 1, ECF No. 10.) Cpl. Bonds called Unit Manager Bryant to deal with the situation. (*Id.*) According to Wallace, Unit Manager Bryant refused to hear his side of the story and ordered Wallace to remain on lockdown for the day. (*Id.*) Wallace did not agree with the order and argued with Bryant. (*Id.*) During the argument, Unit Manager Bryant told Wallace he was going to move Wallace back to Unit 12 "where I know you can't go." (*Id.*) Although the Amended Complaint is not clear on this point, Wallace was housed in Unit 12 in January 2015, when unknown Vice Lord inmates ambushed Wallace and stabbed him in the back over twenty times. (*Id.*) Wallace alleges that Unit Manager Bryant knew about this earlier assault in Unit 12 and had the assault in mind when he threatened to move Wallace to Unit 12. (*Id.* at 2.)

Wallace was released from segregation on December 14, 2015. (*Id.*) Wallace alleges that Cpl. Jones told Wallace that Unit Manager Bryant intended to transfer Wallace to Unit 12. (*Id.*) Wallace pleaded with Unit Manager Bryant not to send him to Unit 12 and cited the large

number of Vice Lords housed in the unit. (*Id.*) Even though Unit Manager Bryant knew the danger Wallace was facing, he reassigned Wallace to Unit 12 anyway. (*Id.*) Upon Wallace's transfer to Unit 12, an aggressive and angry mob of Vice Lord inmates approached Wallace and informed Wallace that he was not welcome and should leave before they killed him. (*Id.*) In self-defense, Wallace pulled out two homemade knives and started attacking the other inmates. (*Id.*; *see also* Incident Report 01489473, ECF No. 10-1 at 1.) The altercation lasted about a minute before Sgt. Coleman intervened, subdued Wallace with pepper spray, and took Wallace to medical. (*Id.*) The next day Wallace spoke with Sgt. Galloway in internal affairs. (*Id.*) Wallace was placed in segregation on the charge of possession of a deadly weapon. (*Id.* at 3.) The Amended Complaint goes on to allege that Wallace experienced paranoia, sleep loss, and auditory hallucinations while in segregation. (*Id.*) On January 4, 2016, Wallace spoke to Dr. Robinson about these issues, and she told Wallace that she would get him some treatment. (*Id.*)

On January 6, 2016, Wallace once again had an argument and received threats from Vice Lord inmates. (*Id.*) Cpl. Jones, Cpl. Doley, and C/O Theus were present and heard the threats but did nothing to intervene. (*Id.*) Two days later on January 8, 2016, Wallace came out of a shower, which everyone in the pod including the Defendant correctional officers knew was broken, and assaulted one of the Vice Lord inmates who had previously threatened him. (*Id.*; *see also* Incident Report 01198491, ECF No. 10-1 at 5.) Wallace contends that Defendants Sgt. Galloway and Lt. Shells never fully investigated the incident. (*Id*. at 4.) These prison officials left Wallace in segregation knowing the seriousness of the situation and the danger to Wallace posed by the Vice Lord inmates. (*Id.*) On February 6, 2017, Wallace also spoke with Warden Holloway, Lt. Alexander, and Assistant Warden Fitts about the staff and disciplinary board, but they too failed to take action. (*Id*.) According to Wallace, he spoke with Capt. Castleman about

3

hearing voices, and Capt. Castleman brought Dr. Robinson to talk to Wallace about it. (*Id.*) Wallace alleges that he asked Capt. Castleman and Dr. Robinson to have him moved from Unit 3 to medical because he did not feel safe around the staff. (*Id.*)

The remaining allegations of the Amended Complaint, which are similar to facts alleged in the initial Complaint, are not as clear. The Amended Complaint alleges that on February 6, 2016, while waiting to take a shower, Wallace saw Unit Manager Bryant and began to hear voices in his head. (*Id.* at 4-5.) At that point Wallace asked to see Dr. Robinson and walked around the pod waiting for her to arrive. (*Id.* at 5.)[1] According to a disciplinary report attached to Wallace's Motion to Amend, Unit Manager Bryant gave Wallace several direct orders either to proceed to the shower or to return to his cell. (Incident Report 01197028, ECF No. 10-1 at 10.) Wallace alleges that Bryant slammed Wallace's face into a staircase, even though Wallace was handcuffed and posed no threat to Bryant. (*Id.* at 5.) Lt. Jones, C/O Jones, C/O Brinkly and a tack team officer took Wallace to medical where he was kept on a "security hold." (*Id.*) On April 28, 2016, Wallace was transferred. (*Id.*) Wallace now seeks punitive and compensatory damages. (Amended Compl. at 10, ECF No. 9)

## SCREENING STANDARD

The legal standards for assessing whether a complaint states a claim on which relief may be granted and the basic elements required to state a claim under 42 U.S.C. § 1983 were set forth in the Court's order of September 11, 2017, and will not be reiterated here.

## ANALYSIS

---

[1] Just as he did in his initial Complaint, Wallace alleges in his Amended Complaint that a John Doe defendant was involved in this episode. And just as it did in its previous order, the Court dismisses Wallace's claim against the John Doe defendant.

4

The Court's order of September 11, 2017, granted Wallace leave to file an amended pleading to allege more facts in support of his Eighth Amendment claims for failure to protect and excessive force. As the Court noted in its previous order, both claims implicate the Eighth Amendment and its guarantee against cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). At the pleadings stage, the Court holds that Wallace's Amended Complaint still fails to state a plausible failure to protect claim. However, the Amended Complaint does allege a plausible excessive force claim.

First, Wallace's Amended Complaint alleges that prison officials failed to protect him by releasing him into a housing unit with inmates who belonged to the gang known as the Vice Lords. According to Wallace, Unit Manager Bryant and other prison guards knew that unnamed Vice Lords had previously assaulted Wallace. But the Amended Complaint fails to cure the deficiencies noted by the Court in its previous order. Like his initial Complaint, Wallace's Amended Complaint does not allege any new facts to show why Wallace's transfer to a different housing unit (Unit 12) where other unnamed Vice Lords (who may or may not have been involved or even known about Wallace's previous altercation with the Vice Lords) were housed posed a risk of substantial harm to Wallace. And Wallace's Amended Complaint does not allege that his altercations with other inmates caused him any physical injuries. The allegations tend to show that Wallace initiated two different fights with other inmates. Because the Amended Complaint does not cure these defects, Wallace's failure to protect claim is **DISMISSED**.

Next, Wallace continues to allege that Unit Manager Bryant used excessive force. Briefly, "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). The key inquiry under the Eighth Amendment is "whether

force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. at 320 21 (citation omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Court holds that Wallace's Amended Complaint states a plausible claim against Bryant for the use of excessive force in violation of Wallace's constitutional rights. Although the Amended Complaint contains only slightly more factual material to make out the excessive force claim, Wallace has alleged that he had requested to see a counselor and that as he waited for the counselor, Bryant ordered him to go on to shower or return to his cell. What happened next is not at all clear from Wallace's pleadings. But even accepting as true Bryant's disciplinary report that Wallace refused to comply with Bryant's orders, Wallace has still alleged that Bryant had him in handcuffs and then "rammed" Wallace's head face down into a staircase. Wallace further alleges that other officers had to take him to medical for treatment, though the Court would stress that Wallace's allegations regarding his need for medical treatment are lacking. The Court holds that for purposes of screening, Wallace's Amended Complaint has alleged enough factual matter to state an Eighth Amendment claim under § 1983.

## **CONCLUSION**

The Court **DISMISSES** Wallace's claim for failure to protect pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Wallace has alleged a plausible Eighth Amendment excessive force claim against Unit Manager Bryant.

It is **ORDERED** that the Clerk shall issue process for Defendant Bryant and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Bryant pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10),

either by mail or personally, if mail service is not effective.  All costs of service shall by advanced by the United States.

It is further **ORDERED** that Wallace shall serve a copy of every subsequent document he files in this case on the attorney(s) of record for Bryant or on any unrepresented Defendant.  Wallace must include a certificate of service on every document filed.  Wallace must also familiarize himself with Federal Rules of Civil Procedure and the Local Rules of Court.  Wallace should promptly notify the Clerk, in writing, of any change of address, transfer to another facility, release from custody, or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of the case without further notice.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  April 24, 2018.